CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 2 6 2008

JOHN F CORCORAN, CLERK
BY: K̄D̄ōt̄s̄o̱n̄
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|   |   |
|---|---|
| NANCY E. MAY, ) | Case No. 5:07cv00007 |
| ) | |
| Plaintiff, ) | **REPORT AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE[1], ) | By: Hon. James G. Welsh |
| Commissioner of Social Security, ) | U.S. Magistrate Judge |
| ) | |
| Defendant, ) | |
| ) | |

The plaintiff, Nancy E. May, brings this action pursuant to 42 U.S.C. § 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. 405(g).

The Commissioner's Answer was filed on May 22, 2007 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered March 5, 2007, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, and 28 U.S.C. § 405(g) he is substituted, in his official capacity, for Jo Anne B. Barnhart, the former Commissioner.

Addressing the reason why she believes the final decision of the Commissioner ought to be either reversed or remanded, the plaintiff's memorandum of points and authorities was filed on June 21, 2007. Therein, she argues that the administrative law judge ("ALJ") failed to articulate a minimally adequate basis for his conclusion that her mental health impairments did not meet or equal Listings 12.04 and 12.06, that the ALJ erred in failing to give the required weight to the treating source opinions of her psychiatrist and her primary care physician, and that the ALJ's non-disability finding lacked the requisite substantial evidentiary basis. No written request was made for oral argument.[2] On July 23, 2007 the Commissioner filed his Motion for Summary Judgment and supporting memorandum. The undersigned having now reviewed the administrative record, the following report and recommended disposition are submitted.

## I. Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement to a period of disability insurance benefits pursuant to the Act. "Under the...Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel,* 270 F. 3$^d$ 171, 176 (4th Cir.2001) (quoting *Craig v. Chater,* 76 F. 3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo.* "It consists of more than a mere scintilla of evidence but may be

---

[2] Paragraph 2 of the court's Standing Order No. 2005-2 directs that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time of his or her brief is filed.

2

somewhat less than a preponderance." "*Mastro,* 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze,* 368 F. 2$^d$ 640, 642.) (4th Cir. 1966) "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (quoting *Craig v. Chater,* 76 F. 3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F. 3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.  Administrative History

The record shows that the plaintiff protectively filed her application for a period of disability insurance benefits on or about July 29, 2004 claiming disability beginning June 8, 2004 due to "fibromyalgia and chronic fatigue syndrome." (R.18,64-67,74-76,79.) After her application was denied, both initially and on reconsideration, an administrative hearing on her application was held on March 1, 2006 before an ALJ. (R.18,30-36,40-45,51-55,63,350-390.) At the hearing, the plaintiff was present; she and her husband testified, and she was represented by counsel. (R.18,27,37-39,350-390.)

Utilizing the agency's standard five-step decisional inquiry,[3] the plaintiff's claim was

---

[3] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel,* 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry requires a determination of whether, based upon the medical evidence, the individual has a severe impairment. 20 C.F.R § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R.

3

subsequently denied by written administrative decision on July 28, 2006. (R.18-29.) Based on the plaintiff's earnings record and testimony that she had not worked since June 2004, at the first decisional step the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 8, 2004. (R.20,68-73,356.) In connection with the ALJ's outline of the medical evidence, at step-two he concluded that the plaintiff's longstanding fibromyalgia and attendant fatigue symptoms and her depressive disorder were "severe" impairments within the meaning of the Act. (R.20.) At step-three, the ALJ determined that neither of these conditions met nor medically equaled any impairment listed in Appendix 1, Subpart P, Regulations No. 4. *See* 20 C.F.R. § 404.1520(d). As part of his step-three determination, the ALJ specifically discussed whether the plaintiff's mood disturbance met the paragraph "A" or the necessary paragraph "B" or "C" criteria of the anxiety disorder Listing. After doing so, he concluded that the plaintiff's depression did not exhibit the persistent disturbance of mood necessary to meet the "A" criteria of Listing 12.04 and that it neither resulted in degree of activity restriction necessary to meet the "B" criteria nor the chronic nature of the condition necessary to meet the "C" criteria. (R.21.) After next assessing the plaintiff's activities, noting that her past relevant work to have been exertionally medium to heavy and determining that her limitations made the agency's Medical-Vocational Guidelines ("Grids") inapplicable, the ALJ concluded that the plaintiff retained the functional ability to perform a range of

---

§ 404.1520(d), If so, the person is disabled; if not, step-four is a consideration of whether the person's impairment prevents him or her from returning to any past relevant work. 20 C.F.R § 404.1520(e); 20 C.F.R § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry consideration of whether the impairment precludes the individual from performing other work. 20 C.F. R. § 404.1520(f).

4

both light [4] and sedentary [5] work. (R.22-29.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review. (R.14-15.) Finding "no reason" to grant a review, the Appeals Council denied the request (R.8-10), and the decision of the ALJ dated July 28, 2006 stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III.    Facts

The plaintiff was born in 1969 and was nearly thirty-five years of age [6] at the time of her alleged disability onset date. (R.74,79,384.) She completed the ninth grade in school . (R.94,356.) She worked for a single employer between 1989 and 2004, first as a shipping clerk, later as a forklift operator, and more recently as a machine operator making automobile parts. (R.86-89,356-360,384-385.) As performed, these jobs were medium in exertional level.[7] (R.87-89,385.)

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds, and jobs in this category may require a good deal of walking or standing. If an individual can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b).

[5] Sedentary work involves lifting items weighing up to 10 pounds and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing may be necessary to carry-out the job duties. *See* 20 C.F.R. § 404.1567(a).

[6] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

[7] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can perform medium work, he or she can also perform light and sedentary work. *See* 20 C.F.R. § 404.1567(c).

5

The plaintiff's medical records show that at least since 2001 she has been seen and treated by a number of health care providers for reoccurring complaints of diffuse muscle and joint pain and stiffness, fatigue, and episodes of significant depression. (R.145-146,151-152,154-167,170-173,175, 177,181-182,214-215,217,221-222,224,226-228,231-247,249-257,274-278,299,301-302,304-305,313-322.)

These records shows that her medical condition was regularly followed by Dr. Joseph McNamara, her primary care physician during the period from September 2001 until February 2006. In the earliest of these records, Dr. McNamara noted that the plaintiff complained of experiencing pain, stiffness and swelling in her fingers, knees, ankles and feet for the preceding six months, and he noted that she also complained of "becoming depressed again because of how poorly she feels." (R.255.) No psychotropic medication was prescribed at that time, and Ibuprofen, 800 mg., three times per day, was prescribed by Dr. NcNamara for her "arthralgia.." (*Id.*) Although an antidepressant and various stronger pain medications were later prescribed and the plaintiff often presented with complaints of increased fatigue, Dr. McNamara's office notes suggest no medically significant change either in her physical condition or in her basic symptomalogy over the next four and one-half years. (R.221-254,296-305.)

During this same time period, the plaintiff was also seen and treated on various occasions by a number medical specialists. These records similarly demonstrate no medically significant change in her basis condition and symptomology.

6

In the Fall of 2002 radiographic studies, including an MRI, demonstrated only "mild degenerative spondylosis." (R.164-168.) In the Spring of the following year, she was seen by Dr. John Sherry for pain treatment. (R.142-144.) On examination he found the plaintiff to be only "slightly depressed, to exhibit no significant loss of muscle strength or atrophy, to have well-maintained spinal processes, and to demonstrate tenderness only in the right trapezius and rhomboid muscles. (*Id.*)

In November of the same year, the plaintiff's condition was evaluated by Dr. Donald Kimpel, a University of Virginia Medical Center staff rheumatologist. (R.145-146.) The results of his physical and musculoskeletal examinations were both "unremarkable except for a few [trapezius] trigger points" and some right wrist tenderness. (*Id.*) And in early August 2004, she was seen by Dr. R. Steven Pence, an allergist. (R.174-176.) At that time he found the plaintiff to be "well- appearing," "happy and cooperative," and to exhibit an appropriate psychological status. (R.175.)

When seen two weeks later at Piedmont Psychiatric by Dr. Virginia Bayliss, the plaintiff was noted to be "tearful," "anxious," and experiencing a major depressive episode. (R.181-182.) At that time the plaintiff's anti-depressant medication regime was adjusted, apparently for the first time in nearly one and one-half years. (R.177-183,25.)

Approximately one month later, she was seen and examined by Dr. Mark Warner pursuant to a referral for a cardiology consultation. (R.184-88.) Neither Dr. Warner's clinical examination nor the results of a stress test and an echocardiogram demonstrated any medically significant abnormality. (*Id.*)

7

Complaining of daily pain, fatigue and worry, the plaintiff was subsequently seen by Dr. Lawrence Connell in February 2005. (R.274-278.) Finding that the plaintiff was experiencing a significant depressive episode, Dr. Connell adjusted her psychotropic medication regime, and over the next year his progress notes indicate that the plaintiff reported improvement in her outlook and functional abilities. (R.277,312-322.)

As additional evidence in support of her disability application, the plaintiff submitted functional assessments separately prepared by her primary care physician and by her treating psychiatrist. In his January 31, 2005 assessment Dr. McNamara opined that the plaintiff was functionally unable to do even low stress work due to chronic fatigue and moderate-to-severe pain. (R.216-219.) Although Dr. McNamara also noted the plaintiff's depression, in his opinion this emotional factor did not contribute to her physical symptoms and her functional limitations. (R.217.) In contrast, two months later, on April 4, 2005 Dr. Connell opined that the plaintiff's mood disturbance was "exacerbated by her pain and *visa versa*" (R.309) and that her mental health problems would cause frequent deficiencies in concentration, persistence, and pace in a work-like setting. (R.258-271,307-312.)

Pursuant to reviews of the record in December 2004 and again in May 2005, state agency psychologists concluded that the plaintiff's medical and mental health records demonstrated no severe mental status limitation and that her condition neither met nor medically equaled Listing 12.04. (R.189-201,279-295.) After separate functional capacity reviews of the record, state agency physicians concluded that the plaintiff retained the functional ability to do light work. (R.203-205.)

8

*Inter alia*, these physicians supported their conclusions with references to a number of specific entries in Dr. McNamara's office notes. (R.207.)

At the hearing, the plaintiff testified that she was employed by Tenneco Automotive for fourteen and one-half years before stopping work in June 2004 due to chronic pain, fatigue, and depression. (R.356-364.) She stated that her daily activities included getting her daughter ready for school and then resting for most of the day until her daughter returns from school; she stated that she fixed meals for herself and her daughter, watched some TV, and spent time with her daughter whenever she felt well enough. (R.365-366). She stated that she does little housework and fixes the evening meal only when she feels like it. (R.366,370.) She stated that she experiences persistent "nagging dull pain" in her neck and shoulders, persistent pains in her lower back and legs, is depressed due to the pain, is "tired all the time," ache[s] really bad" whenever she tries to walk any distance, has leg pain whenever she drives, gets "aggravated" in traffic , and has "anxiety attacks" once or twice each week. (R.362,365,367, 369.)

In support of her application, the plaintiff's husband also testified. He stated that his wife's condition has resulted in her inability to engage in a number of family activities which she previously enjoyed, and he stated that her condition has resulted in her being "moody" and suffering significant pain and fatigue on any exertion. (R.380-383.)

After describing the plaintiff's vocational history and profile, Robert Jackson, appearing as a vocational witness, testified in response to a hypothetical question that an individual with her

9

vocational profile and the functional ability to perform simple, unskilled work at a light exertional level could work as a cashier, food preparation worker, or packer. (R.383-386.) This witness further opined that these same jobs could be performed by an individual further restricted by an inability to reach overhead, and he opined that at a sedentary exertional level a person with the plaintiff's vocational profile and these functional limitations could perform a number of jobs in the categories of general production worker and materials handler. (R.386-387.)

IV. Analysis

A. The Plaintiff's Condition Does Not
Meet or Medically Equal a Listing [8]

Relying on the functional assessment of Dr. Connell that her mental health condition met the criteria of listing 12.04 (affective disorders) and that it may also meet the criteria of listing 12.06, (anxiety-related disorders), the plaintiff argues that a favorable step-three finding in her favor is required by application of the Listings. In reply, the Commissioner argues that "a careful review" of the record and applicable listing criteria demonstrates that her condition does not meet or medically equal either identified listing. *Inter alia*, the Commission argues that the ALJ appropriately relied on the contrary opinions of "highly qualified" state agency consultants and on a "careful review" of the record in reaching a conclusion contrary to this treating source.

---

[8] The Listing of Impairments ("Listings") at 20 C.F.R. pt. 404, subpt p, app. 1, describe impairments of such severity that they are presumed to prevent an individual from performing any gainful activity on a regular and sustained basis. *See* 20 C.F.R. § 404.1525(a).

10

As stated herein above, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays, v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir 1990); *Taylor v. Weinberger*, 528 .F.2$^d$ 1153, 1156 (4th Cir. 1975). While he may not reject medical evidence for no reason or for the wrong reason, an ALJ may, under the regulations, assign little or no weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings. *See King v. Califano*, 615 F.2$^d$ 1018, 1020 (4th Cir. 1980).

The qualifying criteria for both of the listings cited by the plaintiff include both medical (paragraph "A") and impairment-related functional (paragraphs "B" and "C") criteria. In his consideration of the clinical record, the ALJ concluded, among other things, that it did not demonstrate the necessary paragraph "B" functional difficulties reported by Dr. Connell in his questionnaire responses. These included three or more repeated episodes of decompensation in a work or work-like setting and significant difficulties in social functioning. (R.26.) (*See* 20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 12.04 (B) and 12.06(B)).

In addition, the ALJ noted that the record showed no significant mental health decline during the period of plaintiff's psychiatric treatment by Dr. Cornell. (R.26.) He observed that the record showed several mental health-related examinations over the years and that the plaintiff was always found to be alert, cooperative, appropriately verbal in her responses, and logical and coherent in her thought processes. (*Id.*) Pursuant to Social Security Ruling (SSR") 96-2p, the ALJ also considered the state agency psychologist's May 25, 2005 determination, (R.279-295) that the plaintiff's condition

11

failed to meet the requirements of listing 12.04. (R.21.)

The record, therefore, patently contains substantial evidence to support the ALJ's step-three determination that the plaintiff's depressive disorder did not meet or medically equal listing 12.04. Assuming for the purposes of argument only that her mental health-related records could support a mood disturbance diagnosis consistent with paragraph "A" of Listing 12.04, or an anxiety-related diagnosis under paragraph "A" of listing 12.06, or both, the ALJ sufficiently explained the rationale upon which he based his step-three determination that the plaintiff's condition failed to meet the paragraph "B" criteria [9] of both listings.

### B. Substantial Evidence Supports the ALJ's Finding That the Plaintiff Retained the Functional Ability to Perform Light and Sedentary Work Activities

**1.**

Relying explicitly on 20 C.F.R. § 404.1527 and implicitly on SSR 96-2p, the plaintiff next argues that the ALJ erroneously failed to give the required decisional weight to the opinions of her treating physicians concerning the severity of her fibromyalgia, her mental health condition, and their attendant limitations on her functional abilities. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992). Citing subsection (d) of the same administrative regulation, the Commissioner argues that the ALJ was entitled to discount these opinions on the grounds that they were not well-supported by other

---

[9] In her memorandum, the plaintiff neither argues nor implies that her condition meets the paragraph "C" criteria of either listing 12.04 or 12.06.

12

medical evidence. A full review of the entire clinical record supports this position of the Commissioner.

Although "[c]ourts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the [individual] and has a treating relationship with the [individual]," this deference is not absolute *Hines v. Barnhart,* 453 F.3$^d$ 559, 563 (4th Cir. 2006) (quoting *Mastro v. Apfel,* 270 F.3$^d$ 171, 178 (4th Cir. 2001) (citing 20 C.F.R. § 404.1527) (internal quote marks omitted)). An ALJ, therefore, "may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Id.* (quoting *Hunter v. Sullivan,* 993 F.2$^d$ 31, 35 (4th Cir. 1992). Accord *Foster v. Heckler,* 780 F.2$^d$ 1125, 1127 (4th Cir. 1986).

Contrary to the plaintiff's contention, the opinions of both Dr. McNamara and Dr. Connell concerning her functional limitations were neither "disregard[ed]" nor improperly discounted by the ALJ in connection with his conclusion that she retained the ability to perform the jobs identified by the vocational witness. He discounted Dr. McNamara's January 31, 2004 (R.216-220) opinion evidence concerning the plaintiff's functional limitations for the reason that it was not substantiated by the physician's own treatment and progress notes, and in accordance with the requirements of SSR 96-2p the ALJ articulated specific reasons to the "minimal" weight given to this treating source's medical opinion. (*See* R.25,27.)

He noted that Dr. McNamara's opinion concerning the plaintiff's inability to use her arms, hands and fingers for competitive work activity was not consistent with his statement in the same

13

questionnaire that the plaintiff had no significant limitations for repetitive reaching, fingering and handling. (R.25,219.) He observed that Dr. McNamara's February 2005 progress note showed treatment for an ear ache and for sinus congestion, but made no mention of the plaintiff's fibromyalgia, depression or symptoms of fatigue. (R.25.) He specifically mentioned that Dr. McNamara's progress notes for the period April 2005 through February 2006 showed the plaintiff's weight gain, treatment for sinus problems, and the absence of any change in her pain or fatigue. (*Id.*) In addition, the ALJ made the specific finding that he "afford[ed] significant" decisional weight to the contradictory rheumatology evaluation by Dr. Kimpel, which he concluded was "consistent with the totality of the evidence." (R.27.)

For similar reasons the ALJ discounted Dr. Connell's April 2005 (R.307-311) assessment of the plaintiff's functional capacity due to her mental health condition. (R.26-27.) Likewise, in accordance with the requirements of SSR 96-2p the ALJ articulated specific reasons to the reduced weight given to this treating source's medical opinion. (*See* R.26-27.)

As discussed in the preceding section, the ALJ considered Dr. Connell's opinion concerning the plaintiff's functional limitations related to her mood disorder. Based on his review of the record, the ALJ concluded that Dr. Connell's opinion was not supported by the record, including the doctor's own psychiatric treatment notes. (R.26.) The ALJ also made a specific determination that the mental health findings on examination by Dr. Bayliss in August 2004, were "consistent" with Dr. Connell's February 2005 findings, and he concluded that both were "consistent" with a determination of non-disability for the alleged mental health reasons. (R.27.)

14

In addition, pursuant to SSR 96-6p, the ALJ also noted that he had considered the applicable state agency assessments of the plaintiff's fibromyalgia and mental health condition. Based on his review of the record, he found that they were "essentially consistent with the overall evidence," and he afforded them "significant concurring weight." (*Id.*)

In summary, as part of the step-five decisional step the ALJ in this case adequately addressed the opinions of both treating sources. Pursuant to his obligatory consideration of the record and weighing of the evidentiary conflicts, the ALJ concluded that both treating source physicians had overstated the degree to which the plaintiff was functionally limited. His decision is supported by substantial and persuasive evidence, both medical and testimonial, and the rationale supporting his determination has been adequately explained.

**2.**

The plaintiff also argues in her memorandum that the ALJ had a "duty to seek additional information from [a treating] doctor *sua sponte*, if he disbelieves the medical evidence," is also without any merit. In passing, it merits mention that this argument is based upon a Second Circuit decision (*Perez v. Chater*, 77 F.3$^d$ 41, 47 (2$^d$ Cir 1996)) which is not binding on this court. More importantly and as the Commissioner observed in his brief, the contention is "illogical," given the agency's requirement in 20 C.F.R. § 404.1527(d)(3) that the weight to be given a treating source opinion depends on the extent to which it is well-supported by clinical and laboratory findings in the record.

15

Even if it is assumed for the purpose of argument that the ALJ had some obligation to contact Drs. McNamara and Connell before rejecting their opinions, the plaintiff has failed to make any showing of prejudice. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (holding that a plaintiff must demonstrate that additional evidence would have been produced by such a follow-up contact with a treating source and that it would have led to a different decision); *Ripely v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Therefore, any error by the ALJ in failing to fulfill any such assumed duty was at most harmless. *See Camp v. Massanari*, 22 F. App'x 311, 311 (4th Cir. 2001) (unpublished).

### 3.

Lastly, the plaintiff contends that the ALJ's step-five finding was predicated on vocational testimony given in response to flawed hypothetical questions. As outlined in considerable detail herein, the record in this case provides the requisite bases, upon which to predicate a non-disability determination in this case. The plaintiff's medical records, her treatment history, her symptomology, her daily activities and her lack of any psychiatric or other hospitalizations, all provide a more than ample basis for the ALJ's conclusions concerning the degree to which she is functionally limited. The ALJ's hypothetical inquiries in this case to the vocational witness *fairly* set-out these impairments, and the plaintiff's challenge to the hypothetical questions must, therefore also fail. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (emphasis added); *Johnson v. Barnhart*, 434 F.3rd 650, 659 (4th Cir. 2005).

### V.   Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The Commissioner's final decision gave proper consideration and weight to Dr. McNamara's medical opinions;

3. The Commissioner's final decision gave proper consideration and weight to Dr. Connell's medical opinions;

4. At step-three of the decisional process, the ALJ properly considered the nature and severity of the plaintiff's mental health condition and her associated functional limitations;

5. At step-five of the decisional process, the ALJ properly considered the nature and severity of the plaintiff's fibromyalgia and its associated functional limitations;

6. At step-five of the decisional process, the ALJ properly considered the nature and severity of the plaintiff's physical, and pain-related complaints associated with her diagnosed condition;

7. At step-five of the decisional process, the ALJ properly considered the nature and severity of the plaintiff's mental health condition and its associated functional limitations;

8. At step-five of the decisional process, the ALJ properly considered the nature and severity of the plaintiff's fibromyalgia, its related symptomology, and its associated functional limitations;

9. Substantial evidence in the record supports the Commissioner's finding that through the date of the ALJ's decision the plaintiff was not disabled within the meaning of the Act;

10. Substantial evidence in the record supports the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform a range of light and sedentary work activity;

11. The plaintiff has not met her burden of proving disability since her alleged disability onset date of June 8, 2004; and

12. The final decision of the Commissioner should be affirmed.

17

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 26th day of February 2008.

s/ James G. Welsh
United States Magistrate Judge